**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA            :        :            CRIMINAL NO. 18-359

　　　　　　　v.                                      :        :

JOSEPH SZURGYJLO III                                      :        :            (Padova, J.)

**SENTENCING MEMORANDM ON BEHALF OF
DEFENDANT JOSEPH SZURGYJLO**

TO THE HONORABLE, JOHN R. PADOVA, JUDGE OF THE SAID COURT:

Defendant, above named, by counsel, files this sentencing memorandum.

## I.    **INTRODUCTION AND ISSUES**

The purpose of this introductory section twofold. First to give the court a context within which

to view the defendant and his crime. Second, to highlight the fact that in addition to the sentence

this court will impose, Mr. Szurgyjlo will suffer the loss of his pharmacy license for a

period of ten years.be revoked. Under the applicable statute, the standard revocation period when

one is convicted of a felony is ten years. While Mr. Szurgyjlo would technically be able to begin

the reinstatement process in five years, given the amount of narcotics involved and in light of his

federal felony conviction, in all likelihood he will lose his pharmacy license for ten years. There

1

is, in fact, no guarantee that he will ever regain his pharmacy license. Therefor, as a result of his addiction and his crime, he will lose the ability to practice the profession he loves for ten years, and perhaps, forever.

Mr. Szurgyjlo suffers from the disease of addiction. That disease informs his actions in this case. While he chose to steal narcotics from his employers, the fact is the disease of addiction is such that he suffered from the compulsion to use drugs and that compulsion lead his to make terribly bad choices. Such is the nature of addiction. This is not an excuse. There is no excuse for the crimes Mr. Szurgyjlo committed nor does he offer any excuse. The fact that he is an addict and acted as an addict when he committed his offenses, informs and explains actions that would otherwise appear to be inexplicable. It beggars the mind that this professional who has led an otherwise good and blameless life, would commit the crimes he committed. The answer is found, in part, in his addiction and, in part, in the demons he had to confront in the process of recovery.

What is notable about this case, and what separates Mr. Szurgyjlo from so many others who have stood before this court for sentencing, are the steps Mr. Szurgyjlo has taken to address his problem. As Ms. Foulkes notes in her sentencing memorandum and the letters attached hereto collectively as Exhibit A. Mr. Szurgyjo entered into treatment and has remained clean and sober for over four years. He actively participates in a twelve-step program and, as he will tell you at sentencing, he knows he has but a daily reprieve and must assiduously work his program to remain clean and sober. Also, as Ms. Foulkes notes in her sentencing memorandum, Mr. Szurgyjlo immediately and fully accepted responsibility for his actions. He met with the government on several occasions and did his best to provide cooperation that would lead to a

2

5K1.1 motion but he simply did not have the kind of information that would provide a basis for such a motion. It is also noteworthy and of import that the narcotics he stole were for personal use. The amount of pain pills he stole is staggering and it is amazing that he did not die of an overdose. Nonetheless, there is no disagreement with the fact that he did not distribute narcotic to others.

## II.     APPLICABLE GUIDELINE CALCULATION

The PSR calculate the total offense level as 8 and the criminal history category as I This yields a guideline range of 0 to 6 months imprisonment. There are no mandatory minimum sentences in this case.  Undersigned counsel agrees with the government that a non-custodial sentence is appropriate

## III.    DISCUSSION OF SENTENCING FACTORS SET FORTH IN 18. U.S.C. SECTION 3553(a)

18 U.S.C. section 3553(a) (1) directs the court to look first at the nature and history of the offense and the history and characteristics of the defendant. Subsection (a) (2) directs the court that the sentence should reflect consideration of the seriousness of the offense the need to promote respect for the law and the need to impose just punishment. The statute also requires a sentence that affords adequate deterrence both to the offender and to others in society who might be inclined to commit similar offenses. Finally, the court is to consider the need for rehabilitation and the offenders need for vocational, educational, and other training. Any sentence imposed

should be sufficient but not greater than necessary to meet the requirements for a fair and just sentence.

During the years that the guidelines were mandatory a certain mythology arose as to their reliability. It was thought that they were based on empirical evidence as to what sentences worked and that there was some objective basis for each guideline. What we have learned in recent years is that the guidelines themselves are, in many ways the products of policy decisions, not facts, of political considerations, not objective data. They retain validity as a starting point, to be sure, and each sentencing court must still accurately calculate the now "advisory" guidelines. However, a sentencing judge must be mindful that the guidelines are, at best, justice at the "wholesale" level while sentencing is an exercise in justice at the "retail level." Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456 (2007). Many judges have said that crafting a fair and just sentence is one of the hardest jobs for a judge to perform. In this case counsel suggests that a sentence below the guidelines is appropriate.

IV.     **Defendant's Circumstances**

Mr. Szurgyjlo enjoys widespread and committed support from his family. He is also active in his recovery program and actively participated in a program for addicted pharmacists called SARPH. That program is administered by the State Board of Pharmacy and it is a rigorous program. He successfully completed that program and has maintained his sobriety for over four years. Since getting sober, he has married and stared a family. He has maintained employment

4

as a pharmacist and has been employed by pharmacies who have known about his crimes and his recovery and who have chosen to employ him nonetheless. This is a remarkable fact. Letters of support from the pharmacists for whom he works are included in <u>Exhibit A.</u>

Mr. Szurgyjlo is thirty-four years old and lives in Aston, PA with his wife and child. He enjoys the continuing support of his family. Letters from family members are included in <u>Exhibit A</u> and it is anticipated that many of his family members will attend the sentencing. The Pre-Sentence Report accurately describes Mr. Szurgyjlo's background and circumstances. He comes from an intact, loving, and supportive family. He is a college graduate and successfully completed professional training as a pharmacist. He has bee gainfully employed as a pharmacist. In sobriety he has married and stared a family. He completed an in-patient program at Livengrin and has successfully completed the rigorous recovery program administered by the Board of Pharmacy (SARPH). He has remained clean and sober for over four years. He regularly attends meetings at a twelve-step program. While one cannot predict the future, his prospects for continued sobriety are good. Although he will lose his pharmacy license for ten years, he will find employment and he will continue to be a contributing member of society.

From the beginning, Mr. Szurgyjlo has accepted responsibility for his actions and expressed remorse. Based on all of the evidence in this case and all that we know of Mr. Szurgyjlo, he is unlikely to re-offend.

## IV.      **SENTENCING RECOMMENDATION**


The government and undersigned counsel agree that a non-custodial sentence is in order.

Counsel respectfully submits that the Court should impose a probationary sentence of three years

and order that Mr. Szurgyjlo p[ay the agreed upon restitution of $21, 112 which represents the

value of the drugs he stole from his employer.


Respectfully Submitted,


BARNABY C. WITTELS, ESQUIRE.
Attorney for Defendant
Joseph Szurgyjlo, III

6

**EXHIBIT A**
**LETTERS OF SUPPORT RE: JOSEPH SZURGYJLO**

Michael Lenczynski, R. Ph.

Gary Umland, Heritage Therapeutics

Christopher Casella PharmD., MBA
Director of Pharmacy Services, Health Partner Plans

Erica Wecker, PharmD., BCOP
Oncology Clinical Pharmacist, University of Pennsylvania
Perelman Center for Advanced Medicine

Cheryl D. Johnson, R. Ph.
Pharmacy Supervisor, Roxborough Memorial Hospital

Heather Teufel, Pharm.D., BCCCP
Clinical Pharmacy Specialist, Emergency Medicine
Penn Medicine Chester County Hospital

Edward P. Cullen, RN, MBA
Thomas Jefferson University Health System

Carrie Connahan, RPh

Frank Bengermino, Rph

Samantha Szurgyjlo, Wife

Diletta Szurgyjlo, Mother

Joanna Yannelli, Sister-in-law

Joseph Szurgyjlo, Jr.

Carl Spatocco, Father-in-law

Michael Lenczynski, R. Ph.
734 Quince Lane
Secane, PA 19018
May 3, 2019

The Honorable John R. Padova
Senior U.S. District Judge
Eastern District of Philadelphia

Re: Mr. Joseph Szurgyjlo

Dear Judge Padova,

A bit of background information on myself.  I am a licensed pharmacist in long term recovery
from Substance Use Disorder (since April 15, 1991).  From 1995 until 2002, I was employed by
**S.A.R.P.H.** as the Executive Administrator of the **S.A.R.P.H.** program. This is the program,
recognized and contracted by the Commonwealth of Pennsylvania, as providing the monitoring
of pharmacists and pharmacy interns who have been identified in needing treatment for
Substance Use Disorders or other impairments to practice pharmacy.   This allows for the
Commonwealth of Pennsylvania to help ensure the continued safe practice of pharmacy in the
Commonwealth.  I was also on the governing Board of Directors of **S.A.R.P.H.** from 1995 until
2016.  I am also one of the Peer Assistance Monitors for the program that assists with and
performs mentoring for the participants of the program.   I have participated in numerous
educational programs dealing with Alcoholism and Chemical Dependencies issues in the
profession of pharmacy and the general population. (University of Utah, School of Medicine,
School on Alcoholism and Other Drug Dependencies – 1994 through 2014.  In 2013, I was honored
to receive the Alumni of the Year Award at the University of Utah School on Alcoholism and Other
Drug Dependencies for my continuing work in the treatment of Drug Dependency in the
profession of Pharmacy in Pennsylvania. I have also attended The American Pharmacists
Association's Institute on Alcoholism & Drug Dependencies in 2015; 2016 and 2018)

I have known Mr. Szurgyjlo for over three and half years now.  I first met him at the Pharm-Assist
meeting in Philadelphia.  The Pharm-Assist meeting is for pharmacists and pharmacy interns to
meet and interact with each other with conditions relating with Twelve Step recovery and the
practice of the profession.  The meetings are held on regular basis.  In the western suburban
Philadelphia area, it is held currently on a weekly basis (on Wednesday evenings).  It not a
replacement for a Twelve Step program, but another cog in the gears for the continued recovery
from Substance Use Disorder.  The meetings place an emphasis on working the Twelve Steps of
A.A. / N.A. in the participants' lives and living in continued recovery from Substance Use
Disorders.  In the meetings, the members discuss each of the Twelve Steps that they practice in
their recovery, their progress and concerns about issues each have in their recovery process.

The **S.A.R.P.H.** program asked if I would agree to be his pharmacist Monitor and Peer Assistance person under his **S.A.R.P.H.** contract.  The **S.A.R.P.H.** contract is a binding agreement between **S.A.R.P.H.** and the licensee regarding the monitoring of the participation of the stipulations contained in both the **S.A.R.P.H.** contract and any associated Pennsylvania Board of Pharmacy Consent order, if appropriate.  The **S.A.R.P.H.** contract, which was signed by Mr. Szurgyjlo, and myself, as Mr. Szurgyjlo's Peer Assistant monitor, required that Mr. Szurgyjlo contact me at least on a monthly basis.  The basis of this contact was to inform me of his continued participation with all the terms of the contract, any issues with his continued recovery from his Substance Use Disorder, his attendance at his Twelve Step meetings and participation in those groups.  Mr. Szurgyjlo was expected to attend the Pharm-Assist meeting at least once a month and meet with me to discuss his recovery.

I was responsible to meet with Mr. Szurgyjlo on these terms and discuss his progress in his recovery.  This included his attendance at his regular "twelve step" meetings, how his recovery was progressing and his participation with his groups.  This would let me know of Mr. Szurgyjlo's effort in his recovery.  On our first contact, Mr. Szurgyjlo was generally withdrawn and showed a begrudging interest in entering the **S.A.R.P.H.** agreement.  After a short time, he showed interest and commitment in following the steps outlined in the contact.  I have witnessed how he began to change from a withdrawn, sullen man to a vibrant, productive member of society.

We have discussed his past.  While he has admitted his past misdeeds, it would be amiss to disregard the significant progress he has made in his recovery and the living amends he has made to society and to himself.  He is now a changed man.  He is now cognizant of his actions and has made, and continues to make, amends for these actions of the past.  This is the true meaning of rehabilitation – a making amends for past actions (a change from past activity) to activities that can further strengthen the bonds of societal growth and harmony.

He is a now able to be a friend one can count upon.  He has grown to a man, responsive to the needs of others – not looking for how only take care of himself. He continued to progress in his recovery efforts.  He has been changed in his outlook on life situations and has been equipped, by his workings of the twelve step program of recovery, to be a positive role model.  In his conversations and interactions with me, he has shown that persons he is involved with, like spouse, family and employers, can now enjoy and be confident in their interactions with Mr. Szurgyjlo.

I have come to know him as a friend, a person in recovery and as a colleague. I can now trust him with situations and expect him to consider all the options and weigh them accurately and give sound judgment.  I have come to know him and now respect the person he has been transformed into by his program of recovery.

I would ask your consideration of these facts in the resolution of Mr. Szurgyjlo's case.

Sincerely,
Michael Lenczynski, R.Ph.



HERITAGE
THERAPEUTICS

May 6, 2019

Honorable John R. Padova
Senior U.S. District Judge
Eastern District of Pennsylvania

Your Honor,

My name is Gary Umland. I have been the Pharmacy Manager here at Heritage Therapeutics since 2013 and prior to that held the same position for several years at US Bioservices Corporation. Joe Szurgyjlo had been recommended to us for employment as a staff pharmacist by one of our former pharmacist co-workers whom we have known for almost 20 years and worked closely with for over 10 years. We were aware of his past and his previous enrollment and successful completion of the state sponsored recovery program for assisting pharmacists struggling with substance abuse and other psychological disorders-known as SARPH. We have a great respect and admiration for him as a professional and human being. He let it be known that Joe also had voluntarily enrolled in SARPH and was being monitored via random observed urine, blood, and hair screenings as well as receiving psychological help via professionals and group meetings. During his initial interview Joe was very honest and forthcoming with respect to this information. The recommendation from our former co-worker along with Joe's credentials as a pharmacist, and his monitoring agreement with SARPH gave us the confidence to employ Joe back in July of 2016.

It is my understanding that Joseph Szurgyjlo will be attending court in order to face charges related to his past. He has obviously been very distressed and upset. I have worked closely with Joe for the past few years and during that time he has explained his past actions without any attempts to minimize or make his actions seem insignificant. While he does understand how powerful addiction can be, Joe does not hide behind the excuse of "it wasn't me, it was my addiction". He does realize that practicing pharmacy while impaired created a situation where he could have possibly harmed a patient and most definitely violated a trust that the public has when it employs or utilizes the services of a health care professional. Joe takes ownership of all the things that he did during his addiction and is truly motivated to become a better person. Although I did not know Joe prior to his decision to enroll in SARPH, I am quite sure his family and friends will tell you that he's a lot different today and I can attest that he's a lot different from the person who came to our pharmacy for a job interview in July of 2016.



# HERITAGE
## THERAPEUTICS

Joseph Szurgyjlo has had perfect work attendance along with punctuality since he started working here at Heritage Therapeutics.  He is honest and willing to perform any task that is presented to him.  He relates well with patients and treats them with respect and compassion. As a human being, Joe's perspective on life is tremendous.  Given all the pending penalties, fines, and judgments related to his past he continues to be grateful for the ability to live substance free and appreciates what he has with respect to his employment, family, and friends.  I am quite sure that Joe would agree that his decision to voluntarily enroll in SARPH and seek a better way to live is one of the most important decisions he's ever made in his life and has enabled him to become a responsible, productive, trustworthy member of society.

Sincerely,

Gary Umland RPh

2173 MacDade Blvd
Holmes, PA 19043
Phone: (855) 343-2136   Fax: (855) 658-2707

Christopher Casella PharmD., MBA
Director of Pharmacy Services
Health Partners Plans
901 Market St., Suite 500
Philadelphia, PA 19107

May 3, 2019

Honorable John R. Padova
Senior U.S. District Judge
Eastern District of Pennsylvania

Your Honor,

My name is Christopher Casella and I have known Joseph (known to friends as Joe) Szurgyjlo as a friend since 2004 and as an employee in 2016. I am writing this letter to ask for your leniency upon his sentencing. I am 35 years old and currently serve as a Director of Pharmacy Services at a health insurance company in Philadelphia, PA. I became friends with Joe in pharmacy school and we remained very close throughout our time there and thereafter.  During that time, Joe was the kind of person who would give you the shirt off his back and someone who really valued his family.  He always spoke of his niece and nephew with the type of joy where one would think they were his own kids.  Throughout pharmacy school, Joe and I were together on a constant basis and I considered him one of my best friends.

Shortly after graduating from pharmacy school, Joe started to become distant and it was becoming increasingly difficult to connect with him. Joe was still a great friend to both my wife and I, so we still invited him to our home, sporting events, vacations, etc., but in the rare occurrences he did show up, it wasn't the same. Eventually, I got word from Joe's wife of him losing his job and current stay in a rehabilitation facility. Once Joe got out of rehab, he reached out to me after the dust settled from a new cell phone number to reconnect.  He told me that he got a new phone so that he can remain out of contact with people from his past who were a bad influence.   Joe is now completely sober and focusing on rebuilding everything that was destroyed due to his addiction.

As a pharmacist myself, I completely acknowledge the severity of Joe's crimes. He put his own addictions over his responsibilities' as a pharmacist in addition to the authority of a management position he held.  That being said, once Joe got sober, he also acknowledged this fact, took accountability of his actions and never acted like he was a victim.  In numerous personal conversations I had with Joe, he always remained true to the fact that he created the mess he was in because his addictions were the only thing important to him at that time. In July of 2016, I had an opening for a per diem pharmacist at a hospital where I served as a Director of Pharmacy.  Joe was coming up on 1 year of sobriety and in the S.A.R.P.H program so I was able to reach out to the program director for a referral. I was familiar with S.A.R.P.H. as I had 3 other pharmacists in the program at a prior time.  I spoke with

Kathy Simpson at S.A.R.P.H who provided me with a letter stating Joe was fit to work and subject to random drug testing.   We discussed any limitations he may have and she gave him nothing but positive reviews.   So as of late July 2016, I was able to help provide Joe with a second chance and he came on my team as a per diem pharmacist.   Joe worked hard, showed up on time, and continued to work there even after I moved on.   From that point, Joe was able to get a 2nd pharmacist job and continue on his path towards rebuilding.

Over the last 3.5 years I've watched Joe put everything he has towards getting his life back together.  He has repaired all the relationships he almost destroyed, got his career back on track, and started a family of his own.  Even with the uncertainty of his future, Joe has not deviated from his sobriety and dedication to his family and all who know him.   It is my sincere hope the court takes this letter into consideration at the time of sentencing.  Despite the current case, I still believe Joe to be an upstanding individual, a great friend, a valuable member of the community, and an overall good guy.

Sincerely,

Christopher V Casella

Christopher Casella, PharmD., MBA

Erica Wecker, PharmD., BCOP
Oncology Clinical Pharmacist
University of Pennsylvania
Perelman Center for Advanced Medicine

May 3rd, 2019

Honorable John R. Padova
Senior U.S. District Judge
Eastern District of Pennsylvania

Dear Honorable Padova,

My name is Erica Wecker and I am a Board Certified Oncology Pharmacist at The University of Pennsylvania's Perelman Center for Advanced Medicine. I am writing this letter on behalf of my longtime friend, Joseph Szurgyjlo (Joe), whom I have known for over 15 years. I met Joe while attending Temple School of Pharmacy and we have stayed close friends ever since. Joe has always been a person of strong moral integrity that would literally give you the shirt off his back if you needed it. Back in college, I would describe him as a happy, responsible, and dedicated student. I often studied with him, as he never missed a class and he took impeccable notes. When he had a free period, he would go to a friend's house to walk their dog, just to help them out. He always looked out for others and was very connected to our group of friends. Shortly after college, Joe started to withdraw from us and no one was sure of what was going on. We were busy building our careers, getting married and starting families. It was not until I received a phone call from Samantha, his now wife, telling me that Joe was in a thirty-day rehabilitation center for drug addiction that I realized what was going on.

As an oncology pharmacist who administers opioid medications to patients every day, I am very familiar with the power that these drugs have over individuals. Opioid addiction is a terrible disease that only has two paths: complete self destruction or death. I am grateful that my friend is still alive, and I know that even though he will lose his career as a pharmacist, he is still a valuable person who has a lot to offer. A particularly vulnerable group are healthcare workers who suffer from addiction, and I know that Joe has been actively helping these individuals who are struggling to balance work and their disease.

Over the past three years, I have seen Joe work very hard to overcome his addiction. I know he is very sorry and humbled by his actions. He has been sober now for quite some time and doing everything he can to get his life back on track, attending meetings and working two jobs to pay off his debt, and rebuild his life. Since becoming clean, he and his wife Samantha gave birth to a beautiful baby girl who really needs her father. Joe is an amazing father, uncle and friend. As a mother of two young daughters myself, my heart goes out to Joe and that is why I implore you to carefully consider his ongoing recovery, service to others, and dedication to rebuilding his life when deciding a fair sentence. Thank you.

Sincerely,

*Erica Wecker PharmD, BCOP*

Erica Wecker, PharmD, BCOP

*March 9, 2018*

*To Whom It May Concern*

*First, my cordial greeting. I am very pleased to write a character reference letter for Joseph Szurgyjlo. I have had the pleasure of knowing him for about 3 & ½ years.*

*Joseph Szurgyjlo has been known to me since I started working at Roxborough Memorial Hospital, initially as a co-worker and currently as the Pharmacy Supervisor. I have seen him as a patient, responsible and compassionate hospital pharmacist, who takes great pride in providing quality pharmaceutical care to our patients.*

*Joseph is one of the per diem pharmacist and is often available to cover weekday, weekends and call-outs. He is dependable, responsible, honest, and courteous, and by far one of the most dedicated people that I have come across. On many occasions, I have seen both new and old staff members asking for his advice on specific areas, as his wisdom is as exceptional as he is.*

*Throughout his employment, I've been extremely impressed by how accurately Joseph does his job especially as it relates to following our policies along with state and federal regulations. Joseph is expanding his clinical skills and knowledge and has the ability to put his skills to practice as he serves the needs of our patients.*

*Joseph always maintains his professionalism and is an extremely strong communicator which has helped him as he interacts with his co-workers as well as the treatment teams throughout the hospital.*

*I find him a pleasure to talk to. We often discuss our families and I find him to be a loving a devoted husband and father.*

*It is difficult for me to believe he is before you as a result of his theft of medication for personal use during his addiction. Joseph is a good person and has always had morality in his actions. I can assure you that even though he has had ups and downs in his life, I and many of his friends and colleagues are convinced that Joseph is a human being with a great heart and a decent person.*

*I am aware of Joseph's participation in the S.A.R.P.H. Pharmacy Peer Assistance Program. This program is approved by the Pennsylvania State Board of Pharmacy. It monitors pharmacists with a substance use disorder, so that they may return to practice without creating harm to the health and safety of the public. Joseph has met all the program requirements and continues to be in full compliance with each of their stipulations. I am pleased that Joseph is and continues to be an active participant in the S.A.R.P.H program and is committed to his continued recovery. I also like that I am given regular documented rehabilitation and verifiable recovery information by way of S.A.R.P.H. I have the ability here at Roxborough Memorial Hospital to monitor Joseph's dispensing habits as well as overall pharmacy practices and am again pleased with his performance.*

*Joseph knows the mistakes he has made, of which I am convinced that he is very sorry for having committed, for which he has also being trying to repair. All the financial and emotional damages that his actions may have been caused around him may not be reparable but his continued recovery, progress and contribution to society will only be possible if this justice system and all of us give a new opportunity to him.*

*I believe that everyone deserves a second chance, no matter how they got to where they are. If they have taken all the steps to prove that they deserve the opportunity, then they should be given a shot.  If their intentions are to remedy past wrongs whenever possible and begin in a fresh, positive direction as I believe Joseph has done. Second chances are an important part of growing and learning, when it comes to drug addiction and crime, stigma very often limits the opportunities for those who are ready to start over in recovery and should not be held back due to choices made under the influence.*

*Joseph is smart, he's talented and he is responsible. Joseph has always displayed a high degree of integrity, responsibility and ambition since I have known him. I have personally been intrigued and impressed by his stance on life. I am sure that he will continue to be an asset to our organization, and I am happy to give him my wholehearted support. If there is any additional information that you need about Joseph, please feel free to contact me.*

*Sincerely,*

*Cheryl D Johnson R.Ph.*

*Pharmacy Supervisor Roxborough Memorial Hospital*

Heather Teufel, Pharm.D., BCCCP
Clinical Pharmacy Specialist, Emergency Medicine
Penn Medicine Chester County Hospital
701 E. Marshall Street
West Chester, PA 19380
Phone: 717-951-9481
Email: heather.teufel@pennmedicine.upenn.edu

Honorable John R. Padova
Senior U.S. District Judge
Eastern District of Pennsylvania
Philadelphia, PA

May 2, 2019

Dear Honorable Padova,

My name is Heather Teufel and I am a Board Certified Critical Care Pharmacist working in the Emergency Department (ED) at Penn Medicine Chester County Hospital in West Chester, PA. Working in the ED, I am exposed to many patients with substance use disorders, I chair our local hospital task force focused on the care of patients with Opioid Use Disorder (OUD) and am a member of the University of Pennsylvania Health System OUD Task Force. In light of the national opioid epidemic, we are working together across disciplines to provide resources and "warm hand-offs" to treatment programs helping patients with OUD.

I have known Joseph Szurgyjlo (Joe) since our first year at Temple University School of Pharmacy in 2004. Joe and I were part of a group of close-knit friends who spent a late nights studying together at the library, enjoying Philadelphia sporting events and relaxing on weekends. Joe also introduced me to his high school friend, who is now my husband and the father of my two children. I consider Joe to be a very close friend.

After graduation in 2008, I moved away for residency training and was not in close contact with Joe for a period of time. However, whenever we were able to get together, it was as if no time had passed. At some point, Joe had disconnected from our group of friends and I did not see as much of him as I would have liked. At the time, I was naïve and did not realize the struggle Joe was having with opioids. I would like to think that I would have said something or tried to talk to him about it if I had realized he was struggling with an opioid addiction. During that time in his life, Joe was distant, often late to events and was not himself. I remember my husband and I being the only friends, in addition to his family, who came to his 30th birthday party. Joe had isolated himself during his time of addiction. We had suspicions that Joe was either utilizing drugs or had some other bad habit, but, unfortunately, I didn't have the courage or knowledge to talk to him about it. It was not until he went into an inpatient rehabilitation program that I started

to understand what had changed; Joe had an opioid use disorder. When Joe told me about the amount of opioids he stole from the hospital pharmacy, I was admittedly shocked. As someone who does not struggle with addiction, it was easy to think, "how could he do such a thing?" But, for an individual with a substance use disorder, rationale thinking no longer applies and the focus is on how to obtain more substance to feel normal again. They also often do not recognize the extent of their problem and do not think of the consequences of their behavior. When Joe told me about these charges, he was very humble and stated he understood that what he did was wrong and recognizes that there are consequences for his actions. When talking to me about his addiction and the charges he faces, he never once acted like a victim. He now sees how severe his addiction was and is grateful to be alive, as are we, his friends and family.  Joseph acknowledges that he will lose his pharmacist license, ending a career that took six years of education and over 10 years of experience building. I am confident, however, that he will find a way to continue to contribute to society and continue to help others who struggle with substance use disorders.

I am incredibly proud of the obstacles that Joe has overcome and the recovery path that he is on. Opioid Use Disorder is a mental health disorder that unfortunately affects millions of individuals in the United States. Joe has now completed the Secundum Artem Reaching Pharmacists with Help (SARPH) program and has not had any drug or alcohol in over 3.5 years. He continues to attend meetings at least three times a week, with one being health-care professional focused. Through his own recovery, he has been able to help others who suffer from a substance use disorder get into treatment and recovery. Friends and acquaintances who struggle with substance misuse/use disorders recognize the changes Joe has made in his own life and have reached out to him for help.

He has dedicated the past 3.5 years to rebuilding relationships with his family and friends, has married the love of his life, and most recently welcomed a beautiful baby girl, Ella Grace, into the world. In addition, he has served as a father-figure to his nieces and nephew whose father is, unfortunately, not in their lives. He has volunteered as a coach for his nephew's sports teams and attends his nieces' dance competitions. He has a completely different outlook on life now and finds the positives in any negative situation, including the current charges he faces.

As a healthcare professional working to help patients with substance use disorders, our goal is to get patients clean and allow for them to be productive members of society. My friend Joe has gone above and beyond those expectations. He continues to remain sober, has helped countless others with substance use disorders, is a loving husband, father, uncle and friend and has incredible humility despite this current situation. I ask that you take Joe's recovery and how he has turned his life around into consideration when you decide on sentencing for the crime he committed while under the influence of addiction. Thank you in advance for your consideration.

Sincerely,

Heather Teufel

Heather Teufel, Pharm.D., BCCCP